# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHARD VITRANO, )
 )
           Petitioner, ) C.A. No. 06-310 Erie
 )
v. )
 ) **District Judge McLaughlin**
H.J. MARBERRY, Warden, ) **Chief Magistrate Judge Baxter**
FCI McKean, )
           Respondent . )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.**     **RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Petitioner, Richard Vitrano, be denied, and that a certificate of appealability be denied.

**II.**     **REPORT**

Petitioner is a federal inmate currently incarcerated at the Federal Correctional Institution, McKean ("FCI McKean"), located in Bradford, Pennsylvania. He has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. # 1), in which he contends that the Federal Bureau of Prisons (the "BOP") erred in computing his sentence. Specifically, he seeks to have his two consecutive sentences of incarceration, which were imposed under two different sentencing statutes, aggregated so that he may earn good conduct time on the shorter of his two sentences.

    **A.**     **Relevant Statutory Background**

The Sentencing Reform Act of 1984 ("SRA") (Pub.L. 98-473, chapter II of the Comprehensive Crime Control Act of 1984) was enacted into law on October 12, 1984, and became effective on November 1, 1987. The SRA enacted 18 U.S.C. § 3624(b), which provides that a prisoner who is serving more than a year, but less than life, will receive a credit of 54 days of good conduct time at the end of each year unless the BOP determines that during the year he has not complied with institutional rules. Under the SRA, good conduct time earned each year is vested at the end of that year and cannot be disallowed in the future. Sentences imposed between

1

November 1, 1987 to September 12, 1994, are computed under the SRA.

The SRA also enacted 18 U.S.C. § 3584(c), which provides: "Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment."

The Violent Crime Control and Law Enforcement Act of 1994 ("VCCLEA") (Pub.L. 103-322, Title II, §§ 20405, 20412, 108 Stat. 1825, 1828), became effective September 13, 1994. It amended 18 U.S.C. § 3624(b) by requiring inmates convicted of violent crimes to demonstrate exemplary compliance with the BOP's disciplinary regulations in order to earn good conduct time. Under VCCLEA, good conduct time accrues only on sentences longer than one year in length, but less than life, and does not vest until the inmate earns, or is making satisfactory progress toward, his high school diploma or its equivalent. Sentences imposed between September 13, 1994 to April 25, 1996, are calculated pursuant VCCLEA.

The Prison Litigation Reform Act of 1995 ("PLRA") (Pub.L. 104-134, Title I, § 101[(a)] [Title VIII, § 809(a)], Apr. 26, 1996, 110 Stat. 1321-76; renumbered Title I Pub.L. 104-140, § 1(a), May 2, 1996, 110 Stat. 1327) became effective April 26, 1996. It amended 18 U.S.C. § 3624(b) by requiring *all* inmates to demonstrate exemplary compliance to earn good conduct time. Most significantly, under the PLRA good conduct time *does not vest until an inmate is released from custody*. The PLRA made good conduct time more difficult to earn, and good conduct time may be disallowed at any time during the disciplinary process, as it does not vest until an inmate's sentence is completed. The PLRA also enacted 28 U.S.C. § 1932, which provides that a court may revoke good conduct time earned upon a finding that an inmate filed litigation maliciously or solely for the purpose of harassing the other party, or that he presented a false claim. Sentences imposed on or after April 26, 1996, are computed pursuant to the PLRA.

Respondent explains that the BOP has consistently aggregated sentences of imprisonment for federal sentences that are imposed under the same statutory provision, or statutory provisions that are substantially similar. For example, sentences imposed under the SRA are aggregated together. However, because the SRA radically changed the calculation of federal sentences by eliminating meritorious good time and parole, and changed the award of statutory good time, SRA

2

sentences cannot be aggregated with sentences imposed pre-SRA. Similarly, because the PLRA's computation of good conduct time is substantially different from the earlier statutory provisions, the BOP has determined that PLRA sentences cannot be aggregated with non-PLRA sentences for administrative purposes. This policy is set forth in BOP Program Statement 5880.28, <u>Sentence Computation Manual</u>, which states: "PLRA sentences shall be aggregated with each other but shall not be aggregated with **any** other sentence because of the statutory differences between the manner in which a PLRA sentence must be treated in relationship to other sentences (**18 U.S.C. § 3584(c)**)." (Ex. A[1] (Program Statement 5880.28, Page 78S-78T (emphasis in original)).[2]

### B. Relevant Procedural History

On October 2, 1998, the United States District Court for the Southern District of New York sentenced Petitioner to 57 months of incarceration, with a 3-year term of supervised release to follow, for his conviction of 18 U.S.C. § 371, "Conspiracy to Transport Stolen Property Interstate." (Ex. D). Because the date of the offense underlying the conviction was October 31, 1995, the sentence was imposed pursuant to VCCLEA. At that time, Petitioner was also serving a VCCLEA sentence imposed by the United States District Court for the Middle District of Florida. His sentences were aggregated and he was released from imprisonment on June 7, 2002 via good conduct time earned. (<u>See</u> Declaration of Penny Lundgren, attached to Doc. # 6, at ¶ 3).

While serving his supervised release term, Petitioner committed federal crimes. On February 15, 2006, the District Court for the Southern District of New York sentenced him to serve 48 months of incarceration on a conviction of "Wire Fraud," in violation of 18 U.S.C. § 1343. (Ex. C). Because the date of the offense underlying this conviction was April 26, 2005, the sentence was imposed pursuant to the PLRA. The court also determined that Petitioner had violated the conditions of the supervised release sentence that it had previously imposed on his 1998 conspiracy conviction, and ordered him to serve 8 months of incarceration for that violation, consecutive to his

---

[1] All Exhibit citations are to the documents attached to the Response (Doc. # 6).

[2] BOP policy provides that: "SRA and VCCLEA sentences shall be aggregated until an inmate goes into a **PENDING UDC** status or **GED UNSAT** status at which time the sentences shall be de-aggregated." (Program Statement 5880.28, Page 1-78O (emphasis in original), Ex. A).

3

new sentence. (Ex. E).

Because Petitioner's 1998 supervised release sentence was imposed pursuant to VCCLEA, BOP policy does not permit the 8-month supervised release violator's sentence to be aggregated with his 2006 PLRA sentence for wire fraud. (Lundgren Decl. at ¶ 4; Ex. A (Program Statement 5880.28, Page 78S-78T)). Accordingly, Petitioner's VCCLEA sentence stands alone in the determination of good conduct time, and since that term is less than one year, he is not eligible to earn good conduct time on it. (Id.)

Petitioner earns 54 days of good conduct time a year for exemplary compliance with the disciplinary rules for his 48-month PLRA sentence on wire fraud. In accordance with the PLRA, that good conduct time does not vest until he is released from custody. He is projected to complete this sentence on October 19, 2008, via good conduct time earned. (Ex. B). Petitioner will then begin service of the 8-month VCCLEA supervised release violator's sentence. His projected release date on that sentence is set for June 18, 2009.

In his habeas petition, Petitioner claims that the BOP policy that prevents it from aggregating his PLRA sentence with his VCCLEA sentence is violative of 18 U.S.C. § 3584(c)'s directive that "[m]ultiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment." As relief, he seeks an order from this Court directing Respondent to aggregate his two sentences, which would result, he contends, in the opportunity to earn an additional 32 days of good conduct time.

### C.     Subject Matter Jurisdiction

Although a challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255, a claim concerning the execution of a federal sentence by federal prison and parole authorities is properly brought under 28 U.S.C. § 2241. Bennett v. Soto, 850 F.2d 161 (3d Cir. 1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir. 1976). Because Petitioner is challenging the execution of his sentence, his habeas petition is properly brought under 28 U.S.C. § 2241. Section 2241 provides that a writ of habeas corpus shall not extend to a prisoner unless "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

4

**D.     Exhaustion**

Before seeking habeas relief pursuant to § 2241, inmates must exhaust available administrative remedies. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir.1996). To exhaust administrative remedies before the BOP, a federal inmate seeking review of an aspect of his confinement must first seek to resolve the dispute informally. See 28 C.F.R. § 542.13. If the inmate does not receive a favorable determination, he may submit a formal written Administrative Remedy Request for response by the warden of the facility in which he is incarcerated. See 28 C.F.R. § 542.14. If the inmate is not satisfied with the warden's response, he may appeal the warden's decision to the Regional Director within 20 days of the date of the decision. If he is not satisfied with the Regional Director's response, he may submit an appeal of the Regional Director's decision to the Central Office within 30 days of the date of the decision. See 28 C.F.R. § 542.15.

Petitioner admits that he has not exhausted his administrative remedies. (Doc. # 1 at 2-3). However, because Respondent does not contend that the petition should be denied because of failure to exhaust, we shall consider it on the merits.

**E.     Discussion**

Computation of a federal sentence is the responsibility of the Attorney General of the United States, who exercises it through the BOP. See e.g., United States v. Wilson, 503 U.S. 329, 331 (1992); 28 C.F.R. § 0.96. The BOP, therefore, is the agency responsible for implementing statutes concerning the computation of federal sentences, including 18 U.S.C. § 3624(b) and 18 U.S.C. § 3584(c).

BOP Program Statements are internal agency guidelines, and in many cases the policies set forth therein are "akin to an interpretive rule." Reno v. Koray, 515 U.S. 50, 61 (1995). The BOP policy at issue in this case is contained in a Program Statement and was not also published in any federal regulation, and thus was not subject to public notice and comment before adoption. Therefore, the policy is not entitled to the deference described in Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842 (1984). See Stiver v. Meko, 130 F.3d 574, 577 (3d Cir. 1997). However, it is still entitled to "some deference" from this Court, and we should defer to BOP policy if its interpretation of the statutory scheme that it addresses in the policy is reasonable

5

and is not an impermissible construction of the statutes at issue. Koray, 515 U.S. at 61; Roussos v. Menifee, 122 F.3d 159, 163-64 (3d Cir. 1997); see also United States v. Mead Corp., 533 U.S. 218, 234-35 (2001);[3] Elizabeth Blackwell Health Center for Women v. Knoll, 61 F.3d 170, 182 (3d Cir. 1995) (deferring to interpretive rule that was not subject to notice and comment when the Secretary of Health and Human Services's reconciliation of the competing interests in the Medicaid statute and Hyde Amendment was reasonable). In making this determination, we shall consider factors such as the BOP's expertise in sentence calculation, the persuasiveness of its position regarding the need for the policy, and the thoroughness of its analysis of the interplay between Section 3584(c) and the various versions of Section 3624(b). Mead Corp., 533 U.S. at 227-39.

The BOP explains that the challenged policy is necessitated because the PLRA created a latent conflict between Section 3584(c)'s provision for aggregating sentences and the various versions of Section 3624(b). This conflict arises when an inmate is subject to a sentence imposed under a non-PLRA version of 3624(b) and a sentence imposed under the PLRA version of that statute. Because the PLRA's computation of good conduct time and the vesting of that time is substantially different from the SRA and the VCCLEA versions of Section 3624(b), the BOP has determined that it is not mathematically possible to calculate sentences imposed under the PLRA with non-PLRA sentences. Thus, it cannot "treat" PLRA and non-PLRA sentences "as a single, aggregate term of imprisonment" for "administrative purposes" pursuant to Section 3584(c).

To resolve the conflict between Section 3584(c)'s provision for aggregating sentences and the various versions of Section 3624(b), the BOP has adopted the policy PLRA sentences shall not

---

[3] The Supreme Court explained in Mead, 533 U.S. at 234-35, that:

Chevron, did nothing to eliminate [the holding in Skidmore v. Swift & Co., 323 U.S. 134 (1944)] that an agency's interpretation may merit some deference whatever its form, given the "specialized experience and broader investigations and information" available to the agency, [Skidmore, 323 U.S. at 139], and given the value of uniformity in its administrative and judicial understandings of what national law requires, id. [at 140], See generally, Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 136 [ ] (1997) (reasonable agency interpretations carry "at least some added persuasive force" where Chevron in inapplicable); Reno v. Koray, 515 U.S. 50, 61 [ ] (1995) (according "some deference" to an interpretive rule that "do[es] not require notice and comment"); Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144, 157 [ ] (1991) ("some weight" is due to informal interpretations though not "the same deference as norms that derive from the exercise of … delegated lawmaking powers").

6

be aggregated with non-PLRA sentences. This policy is a proper exercise of the BOP's policymaking authority. Section 3584(c) was enacted by the SRA, and became effective at the same time the SRA version of Section 3624(b) became effective. Although Congress made significant changes to Section 3624(b) when it enacted the PLRA, the SRA version of Section 3584(c) is still in effect. Congress has not addressed the conflict that has developed between the requirement to aggregate sentences for administrative purposes and the later change to the manner in which good time credits are earned and vest under the PLRA. The BOP, which has expertise in sentence calculation and the administration to good conduct time, has identified the conflict and addressed it. The BOP's position regarding the need for such a policy is persuasive, and it appears to have been arrived at after thorough consideration. In sum, the BOP policy reasonably resolves the conflict of the statutes at issue, it is not an impermissible construction of those statutes, and this Court shall defer to its view that PLRA sentences cannot be aggregated with non-PLRA sentences. Accord Pizarro v. The Federal Bureau of Prisons, 2005 WL 117942 (D.N.J. May 18, 2005).

Finally, Petitioner's non-specific allegation that the BOP violated his due process rights under the Fifth Amendment also fails. The Due Process Clause itself does not create a liberty interest in credit for good behavior, see Sandin v. Connor, 515 U.S. 472, 477 (1995), nor do the statutes at issue, for the reasons set forth above. And, he has no substantive due process right to good conduct time credit. See Sandin, 515 U.S. at 477-87 (substantive due process rights limited to situations involving atypical and significant hardships in relation to ordinary incidents of prison life).

Therefore, Petitioner's two sentences may not be aggregated for administrative purposes, and he is not entitled to any additional good conduct time. The BOP has correctly calculated his sentence, and the habeas petition should be denied.

### F. Petitioner's Motion To Expedite Is Dismissed

Petitioner has filed a Motion to Expedite. (Doc. # 8). In light of this Report and Recommendation, Petitioner's motion is DISMISSED AS MOOT.

### G. Certificate of Appealability

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as

amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Federal prisoner appeals from the denial of a Section 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

### III.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied, and that a certificate of appealability be denied.

In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B), the parties are allowed 10 days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have 7 days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ SusanParadise Baxter
SUSAN PARADISE BAXTER
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: January 3, 2008